# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **RICHARD DALE HUCHISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:13-cv-01175** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgement on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18. Plaintiff has filed a Reply. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff completed his application for Disability Insurance Benefits ("DIB") on July 30,

2009, alleging that he had been disabled since September 30, 2007,[1] due to "severe depression," schizophrenia, arthritis, degenerative disc disease, asthma, and pain in the right wrist. *See, e.g.,* Docket No. 12, Attachment ("TR"), pp. 187, 210-211. Plaintiff's application was denied both initially (TR 109-111) and upon reconsideration (TR 113-114). Plaintiff subsequently requested (TR 116-118) and received (TR 67-84) a hearing.[2] Plaintiff's hearing was conducted on March 2, 2012, by Administrative Law Judge ("ALJ") Michelle Thompson. TR 33-63. Plaintiff and vocational expert ("VE"), Chelsea Brown, appeared and testified. *Id*. Plaintiff's attorney, Robert Parker, also appeared. *Id.*

On April 12, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 15-32. Specifically, the ALJ made the following findings of fact:

> 1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.
>
> 2.   The claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 29, 2009 through his date last insured of December 31, 2011 (20 CFR 404.1571 *et seq*.).
>
> 3.   Through the date last insured, the claimant had the following severe impairments: lumbar spine degenerative disc disease; cervical stenosis; traumatic arthritis in the right hand; major depressive disorder (20 CFR 404.1520(c)).
>
> 4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or

---

[1] Plaintiff later amended his disability onset date to July 29, 2009. TR 206.

[2] The record contains multiple copies of the hearing notice. *See e.g.* TR 67-84, 85-102, 127-144, and 153-170. They appear to be the same document in whole or in part.

medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the last date insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours out of 8 hours; sit 6 hours out of 8 hours; and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant is able to understand and remember simple and 1-4 step detailed tasks but could not make independent decisions at an executive level. The claimant is able to concentrate and persist for a two-hour period in an 8-hour day with customary breaks. The claimant is able to interact appropriately with public, co-workers, and supervisors; however, would work better with things than with people. The clamant [*sic*] is able to adapt to infrequent change.

6. Through the date last insured, the claimant was capable of performing past relevant work as a sorter/pricer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a "disability" as defined in the Social Security Act at any time from July 29, 2009, the amended alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(f)).

TR 20-28.

Plaintiff timely filed a request for review of the hearing decision. TR 13-14. On August 20, 2013, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) not according appropriate weight to the opinions of Plaintiff's treating physician, Dr. Cummings, and consultative examiner, Dr. Huang; (2) improperly evaluating Plaintiff's credibility; and (3) failing to include Plaintiff's manipulative limitations in her RFC determination.  Docket No. 15.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Evaluation of, and Weight Accorded To, the Opinions of Consultative Examiner, Dr. Huang, and Treating Physician, Dr. Cummings

With regard to the evaluation of, and weight accorded to, the opinion of consultative examiner Dr. Huang, Plaintiff argues that the ALJ "failed to provide any reasons whatsoever for rejecting the portions of Dr. Huang's opinion which were more restrictive than the opinions of Dr. Gulbenk and Dr. Gregory." Docket No. 15. Specifically, Plaintiff takes issue with the ALJ's discounting of Dr. Huang's opinion that Plaintiff was limited to standing and walking for four hours in an eight-hour day, a limitation that is more restrictive than the ALJ's ultimately determined RFC. *Id.* Plaintiff notes that the only hypothetical question posed to the VE that included a limitation to standing and walking for four hours in an eight-hour day resulted in the VE testifying that that hypothetical claimant would be unable to perform any past relevant work, the result of which is that Plaintiff "would GRID at a light RFC." *Id.*, *referencing* TR 57-58.

Plaintiff also agues that the ALJ did not accord proper weight to the opinion of Dr. Cummings, Plaintiff's treating physician, and failed to provide "good reasons" for giving little weight to the findings therein. *Id.* at 8. Plaintiff contends that the ALJ's statement that Dr. Cummings' opined RFC restrictions were "not supported by objective diagnostic findings" did not specifically identify the clear reasons why the ALJ discounted those findings. *Id.*

Defendant responds that the ALJ properly accepted the portions of Dr. Huang's opinion that were consistent with the opinions of Drs. Gulbenk and Gregory and the record in its entirety. Docket No. 18 at 8-10. Defendant notes that Dr. Gulbenk "cited specific medical records in

support of her opinion"; the opinions of Drs. Gulbenk and Gregory most closely correlated with the objective evidence; and "the physical limitations opined by Dr. Huang are close to those contained in the ALJ's RFC finding." *Id.*

Concerning the ALJ's according little weight to Dr. Cummings' RFC opinion, Defendant responds that Dr. Cummings' report was not supported by the objective medical evidence of record, "including the opinions of Drs. Gulbenk, Gregory, and Huang, ... all of whom opined that Plaintiff was considerably less limited, and whose opinions were based on a review of the evidence." *Id.* at 11.

In his Reply, Plaintiff reiterates his argument that the ALJ did not provide the requisite "good reasons" for rejecting Dr. Cummings' opinion or for according the opinions of Drs. Gulbenk and Gregory more weight than the opinion of Dr. Huang when Dr. Huang's opinion was more restrictive. Docket No. 21. Plaintiff notes that if the ALJ had credited Dr. Huang's opinion that Plaintiff was limited to "standing and walking for 4 hours," he would be unable to perform past relevant work. *Id.* at 3.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[4] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any

---

[4] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

On October 5, 2009, DDS physician, Dr. Huang, performed a consultative examination of Plaintiff. TR 616-619. In Plaintiff's "Range of Motion Examination," Dr. Huang noted that:

> Cervical spine has normal appearance with normal range of motion. Full normal range of motion of the shoulders, elbows, and wrists. Normal handgrip strengths. Lumbar spine, extension is reduced to 20 degrees, flexion to 65 degrees. Negative straight leg raises to over 45 degrees. Normal range of motion of hips, knees, and right ankle. Left ankle does have mild swelling deformity. Dorsiflexion is reduced to 50 degrees and plantar flexion to 35 degrees.

TR 617.

Dr. Huang diagnosed Plaintiff with: (1) mild wedge compression at L5; (2) mild degenerative disc disease of the lumbar spine; (3) mild degenerative disc disease of the cervical

spine; and (4) history of "schizophrenia?/depression/alcohol abuse." TR 617-618. Dr. Huang

opined that Plaintiff could occasionally lift twenty-five pounds, frequently lift twelve and a half

pounds, stand and walk for four hours of an eight hour day, and sit for six hours of an eight hour

day. TR 618.

On January 11, 2010, Medical Consultant Dr. Celia M. Gulbenk reviewed Plaintiff's

medical records and completed a physical RFC Assessment regarding Plaintiff. TR 638-646. In

that RFC, Dr. Gulbenk opined that Plaintiff could occasionally lift and/or carry twenty pounds,

frequently lift and/or carry ten pounds; stand, walk, and sit for "about 6 hours in an 8-hour

workday"; push and pull without limitation; and occasionally climb, balance, stoop, kneel,

crouch, and crawl. *Id.* She further opined that Plaintiff had no manipulative, communicative, or

environmental limitations, but did have far acuity limitations in "gross vision only." *Id.* Dr.

Gulbenk noted that she accorded "little weight" to the medical source conclusions in the record

regarding Plaintiff's limitations because "no problems with gait noted elsewhere in longitudinal

MER or at FO; nor has the cl c/o LE problems." TR 644. As support for her opined limitations,

Dr. Gulbenk also noted:

> Asthma - cl with dx of asthma, clear lungs, no acute tx for asthma.
> Nonsevere.
>
> Musculoskeletal - remote hx R wrist fusion, scaphoid resection.
> Only c/o wrist pain was in 6.08 - had good wrist strength with NL
> grip. XR showed absent scaphoid and fusion of carpal bones. At
> CE cl with FROM UE joionts [*sic*], no UE weakness, NL grip.
> Nonsevere wrist impairment. CL also c/o R shoulder pain at that
> time - had FROM with some crepitus; XR NL. NL ROM shoulder
> at CE. No shoulder MDI. In 6/08 cl c/o back pain. Had no spasm,
> SLR 45 deg; tender back, CS NL. Prescribed diclofena. 8/08
> exam showed L flexion 70 deg; SLR neg, + R spasm. At CE cl
> with minimal limp; L flex 65 deg; LSR neg to 45 deg. LSXR
> showed compression fx L5 and mild spurring L3-5, mild DDD.

CS XR wtih [*sic*] mild spondlyosis.

Severe back impairment SOL.  Pain statements not credible in
terms of severity given cl in psych MER noted he had lost 15-20
piounds [*sic*] by walking; UDS + THC in 10/08 and 7/09;
prescribed NSAIDS for pain.

RFC as noted.  Cl has not fallen below this level of RFC for any
contiguos [*sic*] 12 month period since AOD.

TR 645.

On June 16, 2010, Dr. James P. Gregory reviewed Dr. Gulbenk's RFC assessment and

affirmed its findings. TR 648.

With regard to the weight she accorded to the opinions of Drs. Gulbenk and Gregory

versus Dr. Huang, the ALJ stated:

The opinions of Dr. Gulbenk and Dr. Gregory have been
considered and are accorded significant weight in this decision.
They are consistent with the medical record as a whole and the
residual functioning capacity outlined above. The opinion of Dr.
Huang is credited insofar as it is consistent with the opinions of
Dr. Gulbenk and Dr. Gregory.

TR 26.

An ALJ may consider the opinion of a non-examining physician designated by the

Secretary in determining whether a claimant has medically determinable impairments.  *Reynolds*

*v. Secretary*, 707 F.2d 927, 930 (6th Cir. 1983). The ALJ considered the objective and testimonial

evidence of record, including Plaintiff's own testimony[5] and medical records, and ultimately

determined that the opinions of Drs. Gulbenk and Gregory should be accorded more weight than

the opinion of Dr. Huang.

---

[5] As will be discussed in greater detail *infra*, the ALJ determined that Plaintiff's reported
limitations were not reflected the evidence of record. TR 27.

With regard to Plaintiff's contention that the ALJ should have accepted Dr. Huang's more restrictive determination that he could stand and walk for a maximum of four hours a day rather than that of Drs. Gulbenk and Gregory that he could stand and walk for six hours a day, as evidenced in the above summaries, the opinions of Drs. Gulbenk and Gregory on the one hand, and Dr. Huang on the other, are inconsistent with each other and with other medical and testimonial evidence of record. As has been noted, when there are conflicting opinions in the record, the final decision regarding the weight to be accorded to the opinions lies with the ALJ. The ALJ noted that she gave more weight to the opinions of Drs. Gulbenk and Gregory because these reports were most consistent with the record as a whole. The ALJ discussed in great detail the medical opinions regarding Plaintiff's conditions, showing that she considered all the evidence in the record when reaching her conclusions. The ALJ properly considered the conflicting opinion evidence and appropriately explained the reasons for her determination. The ALJ's accordation of weight to the opinion evidence was proper; Plaintiff's argument on this point fails.

As noted, Plaintiff also agues that the ALJ did not accord proper weight to the opinion of Dr. Cummings, his treating physician, and failed to provide "good reasons" for giving little weight to the findings therein. Docket No. 15.

On August 5, 2011, Dr. Cummings, Plaintiff's treating physician,[6] completed a Medical Source Statement ("MSS") regarding Plaintiff's physical ability to do work-related activities. TR

---

[6] From the medical records provided, it appears that Dr. Cummings first saw Plaintiff on August 11, 2009. TR 548. Plaintiff continued to see Dr. Cummings at least through the end of December 2011. *See* TR 655-827. As the Plaintiff was last insured on December 31, 2011, "the period in question ends on that date and the subsequent medical evidence in the hearing file is not relative to the establishment of disability prior to the last date insured." TR 25.

649-654. In that MSS, Dr. Cummings opined that Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally; sit, stand, and walk for forty-five minutes at a time without interruption; sit stand, and walk for one hour total in an eight hour work day; would need a cane for walking, but could travel one half to three fourths of a mile without a cane; could occasionally use his hands for reaching, handling, fingering, feeling, and pushing/pulling; could frequently use his feet; and could occasionally climb, balance, stoop, and kneel, but never crouch or crawl. *Id.*

Concerning Dr. Cummings' opinion, the ALJ stated:

> The opinion of Dr. Cummings is not supported by the record as a whole and is entitled to little weight in this decision. The limitations involving sitting, standing, walking, reaching, handling, feeling, fingering, and pushing/pulling are not supported by objective diagnostic findings.

TR 26.

As discussed above, when determining the weight to be accorded to each opinion, the ALJ not only considered the opinions, *inter alia*, of Drs. Gulbenk, Gregory, Huang, and Cummings, but also considered their consistency with each other and with the evidence of record as a whole. As noted by the ALJ and demonstrated through her recitation of the evidence of record, Dr. Cummings' opinion is inconsistent with, and unsupported by, other medical evidence.

Although Dr. Cummings was Plaintiff's treating physician, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record, Dr. Cummings' opinion contradicts other evidence in the record. As

the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Cummings' evaluation controlling weight. Accordingly, Plaintiff's argument fails.

## 2. Evaluation of Plaintiff's Credibility

Plaintiff contends that the ALJ did not "adequately evaluate and assess the credibility of [his] statements as required by SSR 96-7P." Docket No. 15. Particularly, Plaintiff argues that the ALJ did not articulate sufficient reasons for the little weight accorded to his testimony, but rather, made "a single, conclusory statement" regarding the credibility of Plaintiff's allegations. *Id.* at 11-12. Plaintiff also asserts that the ALJ seemingly discounted his credibility based on his performance of "minimal activities" and his failure to undergo neck or back surgery. *Id.* at 12. Plaintiff contends that discounting his credibility for these reasons is improper, as the performance of "minimal activities" does not equate to being able to perform the demands of a full-time work schedule, and because there is no requirement to undergo neck or back surgery before receiving benefits. *Id.*

Defendant responds that the ALJ properly considered Plaintiff's credibility and supported her determination "in considerable detail" through discussion of the objective and testimonial evidence of record. Docket No. 18 at 6-8. Defendant notes that, after appropriately

16

summarizing the objective and testimonial evidence, the ALJ found that the medical records did not support the level of limitation Plaintiff alleged. *Id.* Defendant contends that in making this finding, the ALJ properly:

> relied on no less than eight factors: 1.) That Plaintiff ambulates independently and cares for his personal needs without assistance; 2.) Plaintiff's daily activities; specifically, that Plaintiff watches television, reads occasionally, socializes with friends regularly, cleans, prepares meals, shops for food and clothing, washes clothes, and uses public transportation; 3.) That Plaintiff testified that he has not looked for a job in 4 ½ years, as opposed to being unable to work; 4.) Plaintiff volunteers four days per week at a church, making bags for the homeless, which include a couple of cans of soda, a bottle of water, fruit, a can of Vienna sausages, and a dessert; 5.) Plaintiff has not had surgery on his neck or back, nor is there any evidence that surgery was recommended; 6.) The records are replete with advice to discontinue tobacco use, as it would be beneficial to Plaintiff's overall health; however, Plaintiff continues to smoke cigarettes; 7.) The record does not show any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 months. Rather, the evidence demonstrates that Plaintiff received good results from medications, when taken as prescribed on a consistent basis, and when Plaintiff abstains from cannabis use; and 8.) The record reflects a history of non-compliance with medications and mental health appointments.

*Id., citing* TR 27-28 (footnote omitted).

Plaintiff does not respond to Defendant's argument on this point or further address this statement of error in his Reply. *See* Docket No. 21.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined

17

medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

After a thorough review of the medical and testimonial evidence of record, the ALJ

stated:

> The medical records do not support the level of limitations the claimant alleges. The claimant ambulates independently and cares for his personal needs without assistance. He watches television, reads occasionally, socializes with friends regularly, cleans, prepares meals, shops for food and clothing, washes clothes, and uses public transportation. The claimant testified at the hearing that he has not looked for a job in four and one-half years, as opposed to not being able to work. However, he does volunteer four days per week at a church making bags for the homeless, which include a couple of cans of soda, a bottle of water, fruit, a can of Vienna sausages, and a dessert. The claimant has not had surgery on his neck or back and there is no evidence surgery was recommended. The records are replete with advice to discontinue tobacco use, as it would be beneficial to his overall health; however, he continues to smoke cigarettes. The record does not show any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 months. Rather, the evidence demonstrates he received good results from medication when taken as prescribed on a consistent basis and he abstains from cannabis use. The records reflect a history of non-compliance with medications and mental health appointments. The claimant's impairments are limiting; however, not disabling.

TR 27-28.

As has been demonstrated, the ALJ's decision specifically addresses in great detail not only Plaintiff's medical records, but also Plaintiff's testimony and subjective complaints of pain and limitation. It is clear from the ALJ's detailed, articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. It is within the ALJ's province to do so.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of disability and reach a

19

credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters,* 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." TR 23.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

**3. Exclusion of Manipulative Limitations in ALJ's RFC Finding**

Plaintiff maintains that although the ALJ determined that Plaintiff's "traumatic arthritis was a severe impairment [] the ALJ erred by failing to include any manipulative limitations in the RFC." Docket No. 15 at 10. Plaintiff notes, "Interestingly, every hypothetical posed at the hearing which included manipulative limitations resulted in the VE testifying that he would be unable to perform his past relevant work." *Id.* Plaintiff contends that the ALJ "found that he has a severe impairment of traumatic arthritis in his right dominant hand but then gave no corresponding manipulative limitations," when these "additional limitations could further reduce the RFC and impact his ability to perform his past relevant work as well as other work," such that "the inclusion of manipulative limitations could change the outcome of this case." *Id.*

Defendant responds that the ALJ's RFC determination was proper because she accepted the opinions of Drs. Gulbenk and Gregory, who opined that Plaintiff had no established manipulation limitations and who noted that Plaintiff had good wrist strength and a nonsevere wrist impairment; and, to the extent it was consistent with that of Drs. Gulbenk and Gregory, the opinion of Dr. Huang, who reported that Plaintiff has full normal range of motion in his shoulders, elbows, and wrists, and had normal handgrip strength. Docket No. 18 at 11, *citing* TR 617, 641, 645, 648. Defendant notes that Dr. Huang's physical diagnoses were all mild, and did not include any diagnosis or limitation related to the wrist. *Id.*, *citing* TR 617-618. Defendant also responds that, because of his "remote history of right wrist fusion," the ALJ gave Plaintiff "the benefit of the doubt" in finding that his wrist impairment was severe within the meaning of the Regulations, but that the ALJ was not required to include any specific wrist limitations in her RFC finding because the opinions on which she properly relied

did not find that Plaintiff had any such limitation.  *Id.* at 12.

Plaintiff, in his Reply, reiterates his argument that the ALJ should have included manipulative limitations in the RFC since she found that Plaintiff's traumatic arthritis in the right hand was severe.  Docket No. 21 at 4.  Plaintiff argues that Defendant's response was speculative, and further argues that although Drs. Gulbenk and Gregory "did opine that the claimant had a nonsevere wrist impairment, it is clear that the ALJ's opinion differed in regard to her finding involving the severity of the claimant's right hand impairment."  *Id.*  Plaintiff notes that neither Drs. Gulbenk or Gregory personally examined or spoke with Plaintiff, but that the ALJ did, and Plaintiff maintains that "the ALJ's finding regarding the severity of his right hand impairment could have been based on his testimony."  *Id.*  Plaintiff adds, "It appears that if the claimant has a severe right hand impairment that some sort of limitations would result from that impairment."  *Id.*  Finally, Plaintiff reiterates his argument that every hypothetical question posed at the hearing that included manipulative limitations resulted in the VE testifying that the hypothetical claimant would be unable to perform his past relevant work.  *Id.* at 5.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).  With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to perform certain physical demands of work

activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

With regard to the ALJ's discussion of Plaintiff's right wrist impairment, the ALJ noted that images of Plaintiff's right wrist taken on August 13, 2009 "showed previous fusion of the carpal bones." TR 23. Additionally, the ALJ noted that after a physical therapy evaluation on August 24, 2009, "occupational therapy was recommended for his right wrist," which consisted of "a wrist brace for night and wrist strap for day," as well as a home exercise program. *Id*. The ALJ also noted that Plaintiff reported pain and weakness in his right wrist during a visit to the pain clinic on October 7, 2010, and that, on August 5, 2011, Plaintiff's "[m]otor strength was 5/5 in all extremities." TR 24. When reviewing Plaintiff's disability questionnaires, the ALJ noted Plaintiff's reports of osteoarthritis in his right hand and weakness in his right wrist. TR 27.

Although Plaintiff argues that the ALJ should have included right wrist manipulative limitations in her RFC assessment, the ALJ properly considered, *inter alia*, Plaintiff's medical history and testimony, as well as the medical findings of Drs. Huang, Gulbenk, and Gregory, and the conservative nature of the treatment Plaintiff received for his wrist, and accepted those limitations she found consistent with, and supported by, the evidence of record. The ALJ, after evaluating all of the objective medical evidence of record and Plaintiff's reported level of activity, determined that Plaintiff retained the Residual Functional Capacity to perform medium work. TR 22. The ALJ properly evaluated the evidence in reaching this Residual

Functional Capacity determination, and the Regulations do not require more.

Moreover, as noted above and discussed by the ALJ in her decision, the ALJ's determination that Plaintiff retained the Residual Functional Capacity to perform medium work is supported by the findings of Drs. Huang, Gulbenk, and Gregory, as well as by the conservative nature of Plaintiff's treatment for his wrist, all of which constitutes substantial evidence upon which the ALJ could base her RFC determination. Because there is substantial evidence in the record to support the ALJ's RFC determination, the ALJ's determination must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES

United States Magistrate Judge